Entered on Docket
October 28, 2011

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>XYIENCE INCORPORATED,<br>a Nevada corporation,<br><br>        Debtor. | Case No.: BK-S-08-10474-MKN<br>Chapter 11 |
| DAVID HERZOG, as Liquidating Trustee,<br><br>        Plaintiff,<br>v.<br><br>ZYEN, LLC, a Nevada limited liability company, FERTITTA ENTERPRISES, INC., a Nevada corporation, WILLIAM BULLARD, ADAM FRANK, KIRK SANFORD, and OMER SATTAR,<br><br>        Defendants. | Adversary No.: 09-1402-MKN |

## **MEMORANDUM OPINION CONCERNING MOTION FOR SANCTIONS**

### INTRODUCTION

This is an adversary proceeding in bankruptcy. Fed. R. Bankr. P. 7001. A chapter 11 plan of reorganization was confirmed in the underlying case, in

which Xyience, Incorporated ("Xyience" or "Debtor") is the debtor. Plaintiff is the Liquidation Trustee pursuant to the confirmed plan. The Trustee is responsible for pursuing the Debtor's litigation claims. In this lawsuit, Plaintiff seeks to recover allegedly avoidable preferential and fraudulent transfers and to recover damages claimed to have resulted from Defendants' participation in a dishonest 'loan to own' scheme, which caused Debtor to lose its assets. Under a 'loan to own' scheme, a target entity is caused to borrow money on terms which it cannot or will be prevented from repaying. In other words, default is assured. The loan is secured by the assets of the target, so the lender and its conspirators will be able to foreclose and end up owning.

Defendant Zyen, LLC, ('Zyen") is a Nevada limited liability company. Xyen loaned $12,000,000 to Xyience in December, 2007. The loan was secured by all assets of Xyience. Defendants are alleged to have caused Xyience to default on the repayment of the loan from Zyen, so that the assets of Xyience would pass to an entity favored by Defendants.

Defendant Fertitta Enterprises, Inc., ("Fertitta") s a Nevada corporation.

Defendant William Bullard ("Bullard") is a resident of the State of Nevada. He is the chief financial officer of Fertitta and a manager of Zyen.

Defendants Adam Frank, Kirk Sanford, and Omer Sattar, individuals, have settled with Plaintiff. The "Remaining Defendants" who are the subject of this motion are Zyen, Fertitta, and Bullard,

The motion before the court concerns a discovery dispute. Plaintiff seeks sanctions against Defendants because of their failure to establish a protective discovery hold on documents related to Defendants' business dealings with Debtor, erasure of documents that were electronically stored, and Defendants'

failure to produce available business records with reasonable promptness.

The motion for sanctions was heard on September 30, 2011. Johnathan A. Backman, Esq., appeared for plaintiff, the moving party. Gregory E. Garman, Esq., and Joel Z. Schwarz, Esq., of Gordon Silver, appeared for Defendants.

The parties filed supplemental memoranda on October 12, 2011, and the matter was submitted.

## FACTS

On October 4, 2007, Zyen loaned to Xyience $12 million ("$12 Million Loan"). Under the $12 Million Loan, Xyience granted Zyen a security interest in all or substantially all of Xyeince's assets. Bullard anticipated litigation in connection with this loan. Less than a month later, on November 3, 2007, during a Xyience board meeting, Bullard indicated that he would not accept an appointment to the Xyience board due to a threatened shareholder lawsuits aimed at Xyience and members of Xyience's board. (Dkt. #107-18)[1]. Bullard stated that such an appointment could also negatively impact his duties as an officer at Fertitta and potentially raise lender liability issues in connection with the recent $12 Million Loan made by Zyen to Xyience. Instead Bullard indicated that he would serve as "board observer" as contemplated in the $12 Million Loan.

---

[1] The minutes state, " Mr. Bullard opened the meeting by expressing his concern that certain threatened shareholder lawsuits aimed at the Corporation and the members of the Board might negatively impact his duties as an officer of Fertitta Enterprises, Inc. ("**Fertitta**") and potentially raise lender liability issues in connection with the recent loan made by Zyen, LLC to the Corporation (the "**Zyen Financing**"). In light of these concerns, Mr. Bullard stated that he would not accept his previous appointment to the Board, but would act as a Board observer on behalf of Zyen, LLC in accordance with the Board observer rights granted to Zyen, LLC as part of the Zyen Financing."

On December 7, 2007, a derivative action was filed in the Eighth Judicial District Court, County of Clark, State of Nevada, by certain shareholders of Xyience, including the Klingenberg Children's Education Trust, against Xyience, as nominal defendant, and several of Xyience's officers ("State Court Action"). The State Court Action concerned the $12 Million Loan provided by Zyen to Xyience. Bullard was not named as a defendant in the State Court Action.

On January 18, 2008, Xyience filed a voluntary Chapter 11 petition. On March 31, 2008, the Official Committee of Unsecured Creditors of Xyience, Incorporated, which was appointed in the Xyience bankruptcy case filed an adversary complaint against Zyen related to the $12 Million Loan ("UCC Litigation"). Gordon Silver served as Zyen's counsel in the UCC Litigation and filed a motion to dismiss shortly after the UCC Litigation was initiated.

On or around March 13, 2008, an amended complaint was filed in the State Court Litigation. Gordon Silver, on behalf of defendants Zyen and Fertitta, removed the State Court Action to the United States Bankruptcy Court for District of Nevada on April 4, 2008. Gordon Silver immediately filed a motion to dismiss the State Court Action. Both the State Court Action and the UCC Litigation were dismissed by the bankruptcy court for lack of standing. The court found that derivative claims remain with Xyience and are to be administered as assets of the estate. Those rulings left it to Plaintiff, the Liquidation Trustee under the chapter 11 plan, to pursue the claims asserted in the State Court Action and the UCC Litigation.

On December 29, 2009, Plaintiff filed the instant adversary complaint against the Defendants. On June 25, 2010, Defendants made certain Rule 26 disclosures to Plaintiff. The initial Rule 26 disclosures provided just short of

2,000 pages of documents from Zyen. On August 4 and 5, 2010, Defendants provided supplemental disclosures to their Rule 26 disclosures. These supplemental Rule 26 disclosures provided documents from former defendants Sattar and Sanford.

On August 23, 2010, Plaintiff served upon Defendants its second set of discovery requests ("Second Discovery Request"), seeking electronically stored information ("ESI") and hard copy documents from Bullard, Fertitta and Zyen specifically. By the Second Discovery Request, Plaintiff specifically sought ESI and hard copy documents created between April 1, 2007, and January 2008 ("Relevant Time"). On October 14, 2010, after receiving an extension from Plaintiff, Defendants provided responses and objections to Plaintiff's Second Discovery Request, but provided no ESI or hard copy documents responsive of Plaintiff's Second Discovery Request. In fact, Defendants provided no ESI or hard copy documents on October 14, 2010, at all. Defendants instead indicated that if business records existed that were in the possession of Defendants, Defendants would provide such documents to Plaintiff as soon as they were gathered.

October 19, 2010, Bullard provided a total of 107 pages of documents, none of which were from the critical period of June, 2007, to January, 2008, or that otherwise concerned the $12 Million Loan. Zyen produced some 86 pages of documents and 267 pages of documents were provided by Milbank, Tweed & Hawley, the law firm representing Zyen in the negotiation and consummation of the $12 Million Loan.

Later, in December of 2010, Defendants served upon Plaintiff discovery supplements number five (hard copy documents from an entity called Manzen),

number six (ESI from Manzen) and number seven (hard copy documents from former Defendant Adam Frank. However, Defendants failed to provide Plaintiff the specific ESI and hard copy documents created during the Relevant Time that Plaintiff requested in its Second Discovery Request (from Bullard, Fertitta and Zyen). Plaintiff was forced to postpone the deposition of Bullard scheduled for December 20, 2010, due to delays in producing Bullard's emails and other data from Xyience's servers.

Bullard is also an officer of an entity known as Gordon Biersch Brewing Company ("Gordon Biersch"). He used a Gordon Biersch computer for email on matters unrelated to the business of Gordon Biersch. Those matters included correspondence and documents Xyience and Zyen. In December, 2010, counsel for the parties discussed the possibility that relevant documents may still be on Bullard's Gordon Biersch, even though the matters of interest had occurred three years earlier.

Nothing from the Gordon Biersch computer was produced by Defendants, so Plaintiff was required to serve a subpoena duces tecum ("Subpoena") on Gordon Biersch a non-party, on May 2, 2011.

Plaintiff also served a subpoena ("PMK Subpoena") for the person most knowledgeable ("PMK") regarding the Gordon Biersch computer system and servers. Gordon Biersch designated Bullard as the PMK. A deposition was scheduled for May 24, 2011, wherein Bullard would be deposed in his individual capacity as well as the Gordon Biersch PMK.

An IT specialist was brought in, prior to Bullard's depositions, to get Bullard up to speed on the Gordon Biersch computer system and servers. Defendants claim that work with the IT specialist enabled Bullard to locate an

archive file on his Gordon Biersch computer, where he discovered approximately 148 pages of responsive ESI. Bullard provided the responsive ESI to Plaintiff at Bullard's May 24, 2011 deposition.

Included in the 148 pages of responsive ESI provided to Plaintiff at Bullard's May 24, 2011 deposition was an email dated October 3, 2007 ("October 3 Email"). The October 3 Email was from Bullard to Lorenzo Fertitta ("Mr. Fertitta"). In the October 3 Email, Bullard wrote to Mr. Fertitta:

> We got a verbal offer from Kott (the co-packer) last nite to buy the company [Xyience] for 150 million. Not sure how real it is just yet but will be meeting w[ith] them as early as next week to discuss this as well as ongoing manufacturing. Given that we just locked up Pike via voting agreement, I told Adam [Frank] to keep this low key until we got something in writing with details.
> Have no idea yet if this is legit yet.
> We funded today and vested our warrant.

(Dkt. #107-7).

During Bullard's deposition, when Plaintiff inquired as to whether there existed any additional documents responsive of Plaintiff's Second Discovery Request or subpoenas, Bullard indicated that he was not sure, because he deleted emails and documents related to Xyience. When Plaintiff's counsel asked Bullard if a litigation hold was ever put in place, Bullard stated that he was not aware of any.[2]

Plaintiff next asked Bullard about his secretary, Pegi Nadeau ("Nadeau"), an employee of Fertitta. Emails previously provided to Plaintiff showed copies to Nadeau. Plaintiff's counsel asked Bullard if he had checked to see if there was an

---

[2] "Q - Was a litigation hold ever placed to your knowledge, that is, stop any deletion of any e-mails related to Xyience going through the Gordon Biersch? A - I'm not aware of any." Bullard deposition, May 24, 2011, p. 13; l. 15-19.

-7-

archive file on Nadeau's computer that contained ESI and documents responsive of the Second Discovery Request. Bullard stated that he had not. After Bullard's deposition, Defendants searched Ms. Nadeau's computer at Fertitta. Subsequently, on June 24, 2011, Defendants provided an additional 1404 pages of ESI and documents responsive of Plaintiff's Second Discovery Request and subpoenas.

Plaintiff filed the instant motion for sanctions on August 8, 2011.

## ISSUES

I. What authority, if any, authorizes sanctions against Defendants?

II. Are sanctions against Defendants appropriate?

## DISCUSSION

I. **Under what authority may the court sanction Defendants?**

In its Sanctions Motion, Plaintiff requests that this court enter an order imposing monetary and other sanctions, including attorney's fees and the entry of a partial judgment on certain claims, against Bullard, Fertitta and Zyen for their failure to produce critically important ESI and other documents for nearly nine months after production was due. Plaintiff additionally seeks such sanctions on grounds that Bullard admitted in his deposition that he deleted or otherwise destroyed ESI and hard copy documents likely responsive of the Second Discovery Request, that he abided by no document retention policy at any time, and was not advised by Gordon Silver to impose a litigation hold even though litigation regarding the $12 Million Loan was foreseeable. Plaintiff maintains that ESI and hard copy documents from the Relevant Time are critical to proving its case.

Plaintiff asserts that the court has authority to impose such sanctions under

-8-

Rules 37(d)(1)(A)(ii) and 37(d)(3).[3] However, Defendants are not subject to sanctions under 37(d) because they did not "fail" to respond to the Second Discovery Request.

Rule 37(d) sets forth that the court where the action is pending may, on motion, order sanctions if "[a] party, after being properly served with . . . a request for inspection under Rule 34, fails to serve its answers, objections or written response." Rule 37(d)(1)(A)(ii). Rule 37(a) provides that "[f]or purposes of this subsection, an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." RULE 37(a)(4). As such, "evasive" or "incomplete" responses are explicitly contemplated in FRCP 37(a) but not in FRCP 37(d)(1)(A)(ii). FRCP 37(d)(1)(A)(ii) requires a total failure to respond.[4] See Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 995 (8th Cir.

---

[3]Unless otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

[4]According to Moore's Federal Practice:

> There is a distinction between a complete failure to respond to a discovery demand and an incomplete response. If a response is given, but the discovering party deems the response to be incomplete, that party must move to compel an adequate response. The sanctions that are available to a party that has prevailed on a motion to compel are limited to expenses, including reasonable attorney's fees, incurred in making the motion, unless the moving party already has secured a court order directing the discovery to be provided, and the party that was subject to that order has failed to comply.
>
> In sharp contrast, if there is a complete failure by a party to appear at his or her own deposition, or to respond to interrogatories or requests for production, in that no answers, objections, or responses of any kind are served, and no motion for a protective order is filed, then the moving party has immediate access to a wide range of sanctions, provided that party has attempted in good faith to secure a response through negotiations. There is no requirement that the moving party must have first secured a court order

1975) ("[t]he provisions of Rule 37(d) with regard to interrogatories do not apply when the failure to comply is anything less than a total failure to respond. . . . Similarly, a Rule 37(d) sanction is improper where a written response to a request to inspect documents is made but is not satisfactory."). Therefore, Defendants' assertion that they are not subject to sanctions under FRCP 37(d)(1)(A)(ii) is correct, as Defendants did respond to Plaintiff's Second Discovery Request.

Another possible remedy for an evasive and incomplete response is a motion to compel a discovery response under FRCP 37(a)(3)(B). See GFI Computer Industries, Inc. v. Fry, 476 F.2d 1, 3 (5th Cir. 1973) ("[P]laintiff's remedy for incomplete or otherwise objectionable answers to interrogatories, and for failure to produce pursuant to a Rule 34 request, was to file a motion under Rule 37(a) for an order requiring defendant to answer and to produce documents for inspection.").

A motion to compel would probably have served no purpose under the present facts. By the time that Plaintiff filed the present motion for sanctions, Bullard's destruction of emails was known, and the items on the Gordon Biersch and Nadeau computers had, belatedly, been produced. Court action was necessary, without a motion to compel, to address the question of sanctions.

Even if the Federal Rules of Civil Procedure do not authorize sanctions against Defendants in this bankruptcy adversary proceeding, the court still has inherent powers to impose sanctions related to discovery abuses. The Ninth

---

directing its opponent to provide the discovery in question.

See 7 *Moore's Federal Practice*, § 37.03 (Matthew Bender 3d ed.) (citations and footnotes omitted). See also Laclede Gas Co. v. G. W. Warnecke Corp., 604 F.2d 561, 564-65 (8th Cir. 1979) (court distinguishes FRCP 37(a) from FRCP 37(d) relating to interrogatories).

Circuit has recognized that, "[t]he inherent powers of federal courts are those which are necessary to the exercise of all others, and include the 'well-acknowledged' inherent power to levy sanctions in response to abusive litigation practices."[5] Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1338 (9th Cir. 1985) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-65, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980)). "[A] bankruptcy court's inherent power allows it to sanction 'bad faith' or 'willful misconduct,' even in the absence of express statutory authority to do so. It also 'allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics.'" Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009). It takes conduct something more egregious than mere negligence or recklessness to constitute bad faith or willful misconduct. Id.

For dismissal to be proper under the court's inherent powers, the conduct to be sanctioned must be due to "'willfulness, fault, or bad faith." Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995). "Dismissal under a court's inherent powers is justified in extreme circumstances in response to abusive litigation practices and to insure the orderly administration of justice and the integrity of the court's orders." Halaco Engineering Co. v. Costle, 843 F.2d 376, 380 (9th Cir. 1988) (citations omitted).

Fjelstad involved a negligence and product liability action related to a motorcycle that caused or contributed to injuries in a collusion. 762 F.2d at 1336. Plaintiffs sued American Honda Motor Co., Inc. ("Honda"), the distributor of the

---

[5] Defendants acknowledge that the court has authority to sanction a party for litigation abuses under its inherent powers, but allege that such sanctions cannot be applied here, because Defendants' conduct was not willful or in bad faith.

-11-

motorcycle. Id. Plaintiffs served their first set of interrogatories upon Honda but Honda neither responded or objected to the interrogatories, nor did it seek a protective order within thirty days as required by Rule 33(a). Id. After months of informal efforts to obtain answers to the interrogatories, the district court issued an order on March 8, 1983, directing all counsel to "meet all discovery deadlines imposed by the Federal Rules of Civil Procedure and all Court-imposed deadlines." Id. Shortly after entry of the March 8, 1983 order, Honda served an unsworn rough draft of its answers to some of the interrogatories upon plaintiffs. Id.

Plaintiffs moved for sanctions for Honda's failure to respond to discovery on May 13, 1983. Id. On August 8, 1983, the court ordered that Honda fully and completely answer all of the plaintiffs' interrogatories by August 29, unless it informed the court by affidavit that it could not provide the requested information. Id. Consequently, on August 23, Honda informed the court that it could not provide certain information requested, because such information was in the sole possession of Honda's Japanese parent corporation, Honda Motor Co., Ltd ., which would not divulge such information unless it was a party to the lawsuit. Id.

Plaintiffs, in Fjelstad, amended their complaint and joined Honda Limited as a defendant. Id. Plaintiffs thereafter served interrogatories upon Honda Limited on September 16, 1983. Id. On January 13, 1984, plaintiffs again sought sanctions against both Honda defendants for their willful filing of evasive, misleading, incomplete, and false answers to interrogatories and their failure to comply with the court's order. Id. at 1336-37. On March 1, 1984, the court imposed a $50,000 sanction against the Honda defendants, "[s]pecifically citing Honda Limited's filing of incomplete and misleading answers to interrogatories and [] Honda's one

-12-

year delay in producing an accident reconstruction videotape and its production of requested owner's manuals just three days before depositions." Id. at 1337.

On March 19, 1984, plaintiffs requested that the court enter a judgment of liability against the Honda defendants for their failure to comply with the court's order and answer outstanding interrogatories. Id. The court eventually granted the motion as to both Honda defendants, and the Honda defendants appealed, suggesting that the district court had no authority to impose discovery sanctions against them, and that their conduct did not warrant the severe sanction of default judgment on the issue of liability. Id.

On appeal, the Ninth Circuit first acknowledged that the district court relied on two independent sources of power in imposing the sanction of partial default judgment against the Honda defendants: (a) its inherent power to supervise and establish law concerning the conduct of litigation; and (b) Rule 37. Id. at 1337-38. Although the court recognized that "'[w]hether a court has power to dismiss a complaint because of noncompliance with a production order depends exclusively upon Rule 37' and that 'reliance upon 'inherent power ' can only obscure analysis of the problem.' . . . [the court recognized that the Supreme] Court also has indicated that district courts may rely upon their inherent powers in penalizing some forms of discovery abuse [and that] [i]n this case, the district court invoked its inherent authority only to penalize conduct that it did not find to violate either its discovery orders or the discovery rules." Id. at 1338.

In discussing the district court's inherent powers, the Fjelstad court held that when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice, courts have inherent power

-13-

to sanction the party, even to dismiss an action. Id. That said, the Fjelstad court found that "[d]ue process limits the imposition of the severe sanctions of dismissal or default to 'extreme circumstances' in which 'the deception relates to the matters in controversy' and prevents their imposition 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'" Id.

The Fjelstad court acknowledged that the district court invoked its inherent authority to impose sanctions against Honda Limited for its refusal to disclose manufacturing and design information to Honda before Honda Limited was joined as a defendant, its failure to disclose that policy to Honda when Honda first sought the information, and its providing information in a piecemeal fashion in order to force plaintiffs to seek court intervention. However, the Ninth Circuit found that such conduct did not deceive the district court about the issues in controversy or threaten to interfere with a correct decision. Also, the conduct of Honda Limited could not be characterized as 'utterly inconsistent with the orderly administration of justice.'" Id. On that basis, the court held that the facts of the case did not present the extreme circumstances that would justify imposition of a judgment of liability under the court's inherent power." Id.

While a judgment as to liability is a sanction available under the court's inherent power to punish litigation abuses, a court may impose a variety of other, lesser, sanctions under its inherent powers. For example, "[u]nder its 'inherent powers,' a district court may also award sanctions in the form of attorneys' fees against a party or counsel who acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Leon v. IDX Sys. Corp., 464 F.3d 951, 961 (9th Cir. 2006)

(citing Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997)). A court awarding attorney's fees as a sanction must make an express finding that the sanctioned party's behavior "[c]onstituted or was tantamount to bad faith." Id. "A party 'demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.'" Id. As always, an attorney's fee sanction must be "reasonable." Id.

Courts additionally have the inherent power to exclude evidence as a sanction for flagrant abuses of the discovery process. Merrick v. Paul Revere Life Ins. Co., 500 F.3d 1007, 1014 (9th Cir. 2007) (court granted a motion in limine, and suppressed certain evidence, because a party withheld evidence that it was ordered to produce). Sanctions available under a court's inherent powers include issuing a public reprimand or criticism; awarding attorney's fees, costs, and other monetary sanctions; disqualification, suspension or disbarment of attorney; and any other litigation-based sanction that is made to fit the offense. See 30 *Moore's Federal Practice,* § 807.01[5][a]-[d].

## II.  Are sanctions against Defendants appropriate?

The consequences of Defendants' discovery misconduct are not sufficiently developed to justify a finding of liability in this complex matter. In addition, it now appears that Plaintiff does not intend to pursue the issue of document destruction any further.[6]

---

[6] On October 27, 2011, one day before the issuance of this memorandum, the parties filed the following stipulation (Dkt. no. 126, p. 2, ¶ 7): "No further motions, affidavits, declarations, or papers and pleadings of any kind shall be filed by the Plaintiff, the Trustee and/or his agents, including but not limited to his legal counsel and consulting and/or testifying expert witnesses, with the Court in this case or in any other proceeding, alleging and/or seeking sanctions or other relief based upon the purported destruction or failure to maintain documents or electronically

However, the facts do justify the imposition of monetary sanctions.

No litigation hold for the preservation of documents was ever instituted, even after three lawsuits were filed concerning the Zyen - Xyience loan.

Bullard admits that he has destroyed documents. What he destroyed, and when has not been, and may never be, known. Defendants are not in a position to question the relevance of the things that have been destroyed. The destroyed documents no longer exist, because of the acts of Bullard and, possibly, others. A party responsible for document destruction "can hardly assert any presumption of irrelevance as to the destroyed documents." Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006).

Defendants have offered no explanation of why they failed to check the Gordon Biersch computer equipment used by Bullard for his business activities unrelated to Gordon Biersch. The Gordon Biersch issue was discussed between counsel at least as early as December, 2010, but there was no production until Bullard's deposition in May, 2011. Plaintiff was forced to serve subpoenas upon Gordon Biersch, a non-party, in order to get some production from Bullard's Gordon Biersch computer.

Defendant's also failed to make a timely inspection of the computer used by Bullard's secretary, Nadeau, even though existing emails showed copies to her. Such conduct can only be described as intentionally dilatory.

Defendants have produced many pages of documents in response to Plaintiff's discovery requests, but that does not excuse the willful, bad faith

---

stored information by Defendants, Manzen, LLC, and/or any officers, directors, employees, agents and/or affiliates thereof;"

conduct described above. That conduct has harmed, delayed, and increased the cost of Plaintiff's attempts to prosecute this adversary proceedings, and will not be tolerated.

## CONCLUSION

Defendfant's willful, bad faith discovery behavior justifies the imposition of monetary sanctions to reimburse Plaintiff's expenses, costs, and reasonable attorney's fees. The sanctions are being imposed pursuant to this court's inherent power to supervise and control pending litigation.

The next step is for Plaintiff to file a supplemental motion, requesting specific dollar amounts from the three remaining defendants, together with an appropriate justification for the requests.

An order will be entered, granting Plaintiff's Motion for Sanctions against the remaining Defendants, Zyen, LLC, Fertitta Enterprises, Inc., and William Bullard, as to monetary sanctions only.

Dated: October 28, 2011.

Lloyd King
United States Bankruptcy Judge